

**Dated: November 03, 2025.**

_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| **JULIO CESAR FERNANDEZ** § | **Case No. 25-30778-cgb** | |
| **Debtor.** § | **Chapter 7** | |
| § | | |

## MEMORANDUM OPINION ON VALIDITY OF REAFFIRMATION AGREEMENT NOT SIGNED BY DEBTOR'S ATTORNEY

### Introduction

In this case, the Chapter 7 debtor sought to reaffirm a debt secured by a vehicle. Debtor's counsel, who represented debtor during the course of negotiating the reaffirmation agreement, declined to certify that the reaffirmation would not impose an undue hardship on the debtor and that it was in the debtor's best interest. Accordingly, this Court holds that the reaffirmation agreement is unenforceable. But the Court also holds that in entering into the reaffirmation agreement, the debtor complied with his statutory obligations, so the automatic stay is not lifted under section 362(h)(1) of the Code.

## Background

On June 21, 2025, Julio Cesar Fernandez (the "Debtor") filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code [ECF No. 1], commencing the instant case. In his schedules, Debtor listed Credit Acceptance as a secured creditor in the amount of $18,589.00, secured by a 2016 Honda Civic.[1] Debtor's Statement of Intention reflected an intention to retain the vehicle and enter into a reaffirmation agreement.[2]

On August 25, 2025, the Debtor filed a reaffirmation agreement with Credit Acceptance Corporation (the "Creditor") [ECF No. 12]. The reaffirmation agreement demonstrates a presumption of undue hardship.[3] The reaffirmation agreement was not signed by Debtor's attorney.

Creditor's attorney filed a *Motion for Hearing on Reaffirmation Agreement* [ECF No. 13] on August 26, 2025. The Court held a hearing on September 24, 2025.

## Analysis

### A. The reaffirmation agreement is unenforceable.

When a debtor and a creditor enter into an enforceable reaffirmation agreement, "the debtor's obligation on the debt is unchanged by operation of the Bankruptcy Code."[4] Because a reaffirmation agreement essentially waives a debtor's discharge with regard to a particular creditor, courts strictly construe the statutory requirements found in section 524.[5]

---

[1] ECF No. 1 at 19.
[2] ECF No. 1 at 42.
[3] ECF No. 12 at 3, 7.
[4] *Lindale Nat'l Bank v. Artzt (In re Artzt)*, 145 B.R. 866, 868 (Bankr. E.D. Tex. 1992); *see also In re Herrera*, 380 B.R. 446, 450–51 (Bankr. W.D. Tex. 2007) (characterizing reaffirmation agreements as "*exceptions* to the 'fresh start' policy of the bankruptcy process").
[5] *See, e.g., Sandburg Fin. Corp. v. Am. Rice, Inc. (In re Am. Rice, Inc.)*, 448 F. App'x 415, 419 (5th Cir. 2011) (per curiam) ("The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise contracts to repay dischargeable debts. Because of the danger that creditors may coerce debtors into undesirable reaffirmation contracts, they are not favored under the Bankruptcy Code and strict compliance with the specific terms in Section 524 is mandatory. A reaffirmation contract which does not comply fully with Section 524 is void and unenforceable." (quoting *Republic Bank, N.A. v. Getzoff (In re Getzoff)*, 180 B.R. 572, 574 (B.A.P. 9th Cir. 1995))).

When a debtor is represented by counsel in connection with a reaffirmation agreement, the agreement filed with the court must be "accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection."[6] On the cover sheet of Debtor's reaffirmation agreement, Debtor checked "Yes" on question 11, which asks whether an attorney represented the debtor in negotiating the reaffirmation agreement.[7] However, Debtor's attorney did not sign the required certification.[8] As he explained at the hearing, the attorney, who is a highly experienced practitioner in this area, understandably felt that he could not ethically certify that the debtor was able to make the payment, because the proposed monthly payment on the reaffirmed debt was higher than Debtor's net monthly income and because the agreement sought to reaffirm a loan on a car driven solely by Debtor's adult son.[9]

This Court is bound by the text of the statute.[10] Because the Debtor was represented by counsel during the course of negotiating the agreement and because the agreement was not accompanied by the required attorney's declaration or affidavit, this Court must find the agreement unenforceable.[11] There appears to be no statutory basis for the Court to step in and determine (as it can with respect to unrepresented debtors) that the agreement is in fact not an undue hardship and that it is in the Debtor's best interests, and thus to render the agreement enforceable.

The Court recognizes that the affidavit requirement creates a dilemma for an attorney who represents a debtor in negotiating the reaffirmation agreement but does

---

[6] 11 U.S.C. § 524(c)(3). The declaration requirements are at 11 U.S.C. § 524(k)(5).
[7] ECF No. 12 at 2.
[8] ECF No. 12 at 7.
[9] *See* 11 U.S.C. § 524(k)(5)(B).
[10] The Court acknowledges that interpretation of section 524 is generally difficult. It has been memorably compared to "trying to solve a Rubik's Cube that arrived with a manufacturer's defect." *In re Donald*, 343 B.R. 524, 529 (Bankr. E.D.N.C. 2006).
[11] *See Chase Auto. Fin., Inc. v. Kinon (In re Kinon)*, 207 F.3d 751, 756 (5th Cir. 2000) (finding a proposed reaffirmation agreement unenforceable when lacking the required declaration of counsel); *see also In re Brinkley*, No. 13-00082, 2013 WL 8020916, at *1 (Bankr. D.D.C. Apr. 26, 2013); *In re Vaughn*, No. 08-02810-TLM, 2009 WL 1474100, at *3 (Bankr. D. Idaho May 27, 2009); *In re Rivas*, No. 07-13377-RGM, 2008 WL 597893, at *1 (Bankr. E.D. Va. Mar. 3, 2008); *In re Gonzalez*, No. 07-11165-RGM, 2008 WL 376266, at *1 (Bankr. E.D. Va. Feb. 11, 2008). *But see In re Mendoza*, 347 B.R. 34, 41 n.13 (Bankr. W.D. Tex. 2006) (instructing the clerk of court to set reaffirmation agreements without an attorney signature for hearing because "[t]he lack of a signature is the equivalent of the debtor being unrepresented"). This Court respectfully disagrees with *Mendoza*. If a debtor checks the box stating that they are represented, they are not constructively "unrepresented" just because the attorney does not sign off on the agreement.

not believe that the debtor will be able to make the proposed payments or that the agreement is in the debtor's best interests.[12] The statute penalizes such a debtor as compared with an unrepresented debtor, who at least has the opportunity to make his or her case to the Court that the reaffirmation is not an undue hardship and is in the debtor's best interests.[13] However, unless a debtor proceeds pro se as to the reaffirmation agreement,[14] the plain text of the statute must apply, and the attorney must sign off on the agreement for it to be enforceable.

### B. The Debtor substantially complied with his statutory obligations.

The next issue the Court must address is whether the unenforceable agreement nonetheless satisfies Debtor's statutory obligations and thus prevents the stay from being lifted under section 362(h)(1) of the Code.

A Chapter 7 debtor is required to file a statement of intention indicating whether the debtor will surrender the collateral, redeem it, or reaffirm the debt, and then to perform that intention within 30 days:

> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate–
>
> > (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, [a debtor must] file with the clerk a statement of his intention with respect to the

---

[12] *See* 11 U.S.C. § 524(k)(5)(B) ("If a presumption of undue hardship has been established with respect to such agreement, such certification shall state that, in the opinion of the attorney, the debtor is able to make the payment."). *See also In re Anzaldo*, 612 B.R. 205, 217 (Bankr. S.D. Cal. 2020) (imposing sanctions where "counsel's certification was also not based on an objective assessment of [debtor's] ability to repay the reaffirmed debt"); *In re Griffin*, 563 B.R. 171, 176–77 (Bankr. M.D.N.C. 2017) (considering sanctions on attorney for signing reaffirmation agreement without personal knowledge that debtors could pay); Fed. R. Bankr. P. 9011(b); Tex. Disc. R. Pro. Conduct R. 3.03.
[13] 11 U.S.C. § 524(c)(6).
[14] Some courts are of the opinion that counsel to a Chapter 7 debtor cannot "unbundle" reaffirmation agreements from the scope of representation. *See, e.g.*, Bankr. D. Colo. R. 9010-1(c)(5)(E). Such a situation is not presented here, so the Court need not rule on that point. But it is not clear why counsel cannot permissibly "unbundle" reaffirmation agreements at the direction of (and indeed for the benefit of) the client. *See* Tex. Disc. R. Pro. Conduct R. 1.02(b) ("A lawyer may limit the scope, objectives and general methods of the representation if the client consents after consultation.").

4

> retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and
>
> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;
>
> except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).[15]

Section 362(h) terminates the automatic stay with regard to personal property if a debtor does not comply with those statutory requirements:

> [The stay shall terminate] if the debtor fails within the applicable time set by section 521(a)(2)—
>
> (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
>
> (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.[16]

---

[15] 11 U.S.C. § 521(a)(2).
[16] *Id.* § 362(h)(1).

Stated otherwise, if a Chapter 7 debtor chooses to reaffirm personal property that secures debt, the debtor is obligated to 1) file a statement of intention within thirty days of filing their petition, 2) enter into "an agreement of the kind specified in section 524(c)," and 3) do so within thirty days after the first date set for the meeting of creditors.[17] If the debtor does not do so, and does not otherwise surrender or redeem the property, "the automatic stay is terminated and the collateral is no longer property of the estate."[18] (Among other consequences, at that point, "any ipso facto clause in the contract and lien becomes enforceable,"[19] which may give the creditor an immediate right to foreclose on its collateral.)

Here, Debtor filed his case on June 21, 2025.[20] Debtor's Statement of Intention, listing his intent to reaffirm the 2016 Honda Civic, was filed contemporaneously with his petition.[21] The meeting of creditors was set for July 21, 2025.[22] Under the statute, then, Debtor was to "enter into" a reaffirmation agreement by thirty days later, August 20, 2025.[23] The reaffirmation agreement purports to be signed by Debtor on July 21, 2024,[24] and was signed by Creditor on August 25, 2025.[25] The agreement was filed with this Court on August 25, 2025 by Creditor's attorney.[26]

The first question is whether Debtor complied with the requirement to "enter into" a reaffirmation agreement by August 20, 2025. Although Creditor did not sign the agreement until after the deadline, the Court finds that for the purposes of

---

[17] *See id.* §§ 362(h); 521(a)(2).
[18] *In re Riggs*, No. 06-60346, 2006 WL 2990218, at *2 (Bankr. W.D. Mo. Oct. 12, 2006) (citing *In re Rowe*, 342 B.R. 341, 346 (Bankr. D. Kan. 2006)); 11 U.S.C. § 362(h)(1).
[19] *Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 176 (E.D.N.C. 2008); 11 U.S.C. § 521(d) ("If the debtor fails timely to take the action specified . . . in paragraphs (1) and (2) of section 362(h) . . . nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor."). The type of provision described in § 521(d) is commonly known as an ipso facto clause. *See, e.g.*, *Ipso Facto Clause*, *Black's Law Dictionary* (12th ed. 2024) ("A contract clause that specifies the consequences of a party's bankruptcy.").
[20] ECF No. 1.
[21] ECF No. 1 at 42.
[22] ECF No. 6 at 2.
[23] *See* 11 U.S.C. §§ 362(h)(1)(A); 521(a)(2)(B).
[24] The Court notes that this date was likely mistaken, and that Debtor likely signed the agreement on July 21, 2025. However, as July 21, 2024, and July 21, 2025, are both before August 20, 2025, the analysis is the same.
[25] ECF No. 12 at 7.
[26] ECF No. 12.

6

Debtor's compliance with section 362(h)(1)(B), Debtor timely entered into the agreement.[27]

The remaining question, then, is whether in entering an unenforceable reaffirmation agreement, the debtor has "entered into an agreement of the kind specified in section 524(c)" that satisfies the statutory requirements.[28] Restated, is it enough for the debtor to merely *enter* into an agreement, or does it have to be a *valid and enforceable* agreement to satisfy the requirements of section 362(h)(1)?

Courts have generally held that the automatic stay does not terminate under section 362(h)(1) when an *unrepresented* debtor enters into a good faith reaffirmation agreement, even if a court declines to approve it (and it is thus unenforceable).[29] For instance, the United States District Court for the Eastern District of North Carolina analyzed this issue in *Coastal Federal Credit Union v. Hardiman*.[30] The bankruptcy court in that case had declined to approve the agreement, which tried to reaffirm a car loan, because it imposed an undue hardship on the debtors and was not in the debtors' best interest.[31] However, the bankruptcy court "held that the automatic stay still applied, and that [creditor] could not seek to repossess the vehicle under state law so long as the [debtors] remained current on their payments and complied with the other requirements of the contract and lien."[32] After engaging in substantial and scholarly analysis, the district court affirmed, noting that "a contractual agreement that is unenforceable can still be an

---

[27] *See In re Merritt*, 366 B.R. 637, 640–41 (Bankr. W.D. Tex. 2007) (finding that a debtor's signature on a **creditor-prepared** reaffirmation constituted "making" the agreement); *see also* 3 *Collier on Bankruptcy* P 362.11 (16th ed. 2025) ("Because of the consequences of stay termination, particularly when done automatically without a stay relief proceeding, courts may be reluctant to construe the phrase 'take timely the action' in section 362(h)(1)(B) in a manner that would require complete performance of the stated option within the time specified if extenuating circumstances exist."). In any case, Creditor did not challenge the agreement on this basis.
[28] *See* 11 U.S.C. § 362(h)(1)(A).
[29] *E.g.*, *Hardiman*, 398 B.R. at 186 ("[Court] approval is necessary for an uncounseled debtor's reaffirmation agreement to be *enforceable*, but entering into an enforceable agreement is different than entering into an agreement."); *In re Baker*, 390 B.R. 524, 529–30 (Bankr. D. Del. 2008); *In re Blakeley*, 363 B.R. 225, 231–32 (Bankr. D. Utah 2007) ("The Debtor is not compelled to surrender possession of the property, the stay is not terminated as to the property, and the Bankruptcy Code continues to prevent and limit the operation of the contract's *ipso facto* clauses.").
[30] *Hardiman*, 398 B.R. at 166.
[31] *Id.* (summarizing proceedings before bankruptcy court).
[32] *Id.*

7

'agreement.'"[33] Thus, the debtors fulfilled their obligations under the Bankruptcy Code, and the automatic stay remained in place.[34]

The meaning of "an agreement of the kind specified in section 524(c)" does not depend on whether or not the debtor is represented by counsel. It would seem to be an absurd result for the effect of a debtor's unenforceable reaffirmation agreement to differ depending on whether the debtor was represented, and that result would graft a distinction onto the statutory text that the text cannot bear. Certainly, section 524(c) contains different enforceability requirements based on whether the debtor was represented (see subsection (3)) or not (see subsection (6)). But the "kind" of "agreement" is "specified" in the very first clause of section 524(c), which applies to all debtors, represented or not: "An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title." For this reason, the Court holds as follows: *Just as an unrepresented debtor who enters into a reaffirmation agreement is considered to have complied with section 362(h)(1) regardless of whether the Court then approves the agreement and thus renders it enforceable, so too, a represented debtor who enters into such an agreement has complied with the statute even if his or her attorney fails to certify it.*[35]

This holding accords with analysis in the *Donald* case, in which another Eastern District of North Carolina bankruptcy court noted that the principle of *Hardiman* applies just as well to a represented debtor as to an unrepresented one: "The same result [as in *Hardiman*] could obtain where a debtor's good faith reaffirmation agreement is unenforceable because the attorney who represented the debtor during the negotiation of the agreement declined to sign the affidavit or declaration required by § 524(c)(3)."[36]

---

[33] *Id.* at 182.
[34] *Id.* at 188.
[35] This compelling reading of the plain text of the statute is reaffirmed elsewhere in section 362: Under section 362(h)(1)(B), the stay does not lift when a debtor *attempts* to "reaffirm a debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms." Under those circumstances, there is no "agreement" at all, much less an enforceable one—yet it is clear that a debtor is not penalized because they attempted to comply with their statutory requirements. To impose an enforceability requirement in this section is to add to the text of the statute and not merely to interpret or apply it.
[36] *In re Donald*, 343 B.R. 524, 541 n.11 (Bankr. E.D.N.C. 2006).

Thus, here, Debtor timely entered into a reaffirmation agreement and therefore complied with his statutory requirements.[37] The automatic stay does not terminate under section 362(h)(1).[38]

### C. The Creditor retains its other rights under bankruptcy and non-bankruptcy law.

This result does not mean that Creditor is left helpless. As the court in *Hardiman* explained, Debtor's contractual responsibilities and *in rem* liability remain intact even after *in personam* relief, in the form of the discharge, is granted:

> Should a debtor fail to uphold a contractual duty to make timely payments, insure the collateralized vehicle, or otherwise violate any other provision of the underlying contract (including the lien), the creditor would be able to seek to repossess the vehicle under state law if the contract permits.[39]

Additionally, even before the discharge is entered and the automatic stay is (automatically) lifted,[40] the provisions of section 362(d) still apply, and the automatic stay can still be lifted for cause.[41]

---

[37] *Cf. In re Sanders*, No. 11-51240, 2012 WL 692549, at *3–4 (Bankr. W.D. Tex. 2012) (considering whether a debtor who rescinded a reaffirmation agreement "technically complied with the statement of intention and performance requirements of section 521(a)(2)" but ultimately holding that the agreement was "'unmade,' triggering section 362(h)").

[38] Any ipso facto clause in the contract is nullified because Debtor substantially complied with his statutory obligations. *See* 11 U.S.C. § 365(e)(1); *id.* § 521(d). However, of course, there may be other current or future defaults, on which basis Creditor may be able to foreclose on its collateral once the automatic stay is no longer in place.

To be clear, this Court agrees with prior decisions holding that a "ride-through"—where a debtor does not elect to surrender, redeem, or reaffirm personal property—"is still not an option under § 521 post-BAPCPA." *In re Marquez*, No. 17-60594-RBK, 2017 WL 5438306, at *3 (Bankr. W.D. Tex. Nov. 13, 2017). However, this situation is distinguishable. It is not a true ride-through, but rather what is sometimes called a "backdoor ride-through," because the Debtor has complied with his statutory obligations. *See id.*; *see also In re Rashidi*, No. 24-32587-MVL13, 2025 WL 73067, at *7 (Bankr. N.D. Tex. Jan. 10, 2025).

[39] *Hardiman*, 398 B.R. at 183.

[40] 11 U.S.C. § 362(c)(2)(C).

[41] *See Hardiman*, 398 B.R. at 183. Of course, if the debt is discharged, Creditor will not be able to obtain a deficiency judgment against Debtor *in personam* in the event that it does foreclose upon the vehicle. *See id.* at 188.

9

## Conclusion

Accordingly, IT IS ORDERED that the reaffirmation agreement between the Debtor and Credit Acceptance Corporation is unenforceable. However, the automatic stay is not terminated under section 362(h)(1) as to Debtor's 2016 Honda Civic, the subject of the Reaffirmation Agreement.

# # #